UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

AKEMI TANAKA, an individual,

Plaintiff,

v.

CARIS MPI, INC. (d/b/a Caris Life Sciences), a Texas corporation; and DOES 1 through 50, inclusive,

Defendants.

Case No.: 25-cv-1376-BJC-MSB

**ORDER DENYING MOTION TO COMPEL ARBITRATION**

**[ECF No. 18, 21]**

Before the Court is Defendant Caris MPI, Inc.'s ("Caris" or "Defendant") Motion to Compel Arbitration, ECF No. 18, and Plaintiff's Motion for Leave to File *Sur-Reply*. ECF No. 21. The matters are submitted on the briefs without oral argument. *See* Civ. L. R. 7.1(d)(1). For the reasons set forth below, the Court **DENIES** the Motion to Compel Arbitration and **DENIES** the Motion for Leave to File *Sur-Reply* as moot.

## I. BACKGROUND

### A. Factual Background

Caris is a biotechnology company based in Irving, Texas, that focuses on precision medicine and molecular science. ECF No. 18-1 at 11. The company employs advanced technology to examine tumor tissue and blood samples from cancer patients, providing information that helps physicians make treatment decisions and select appropriate therapies. *Id.*

Dr. Tanaka is a molecular geneticist with expertise in sequencing technologies used for cancer detection and analysis. ECF No. 19 at 9. In the spring of 2023, Dr. Tanaka applied for a molecular geneticist position with Caris. *Id.* at 10. The hiring process spanned several months and involved three rounds of interviews. *Id.* On April 11, 2023, Caris offered Dr. Tanaka the position in its San Diego office. *Id.*

Dr. Tanaka began working at Caris on May 8, 2023. *Id.* During her initial weeks, she participated in the company's onboarding and training program, where she learned to analyze genomic data generated through Caris' Whole Exome Sequencing ("WES") and Hybrid Whole Exome Sequencing ("HWES") assays. *Id.* By the end of May, she successfully completed the WES/HWES competency assessment and was authorized to independently review, analyze, and report molecular testing results for patient samples. *Id.*

**B. <u>Arbitration Agreement</u>**

On June 7, 2023, Caris emailed Plaintiff a DocuSign link directing her to review and execute its Proprietary Information, Intellectual Property, Restrictive Covenant and Arbitration Agreement (the "PIIA"). ECF No. 18-1 at 11. The email advised Plaintiff that her previously approved equity grant was "consideration for and conditioned on" her execution of the PIIA and instructed her to sign the agreement no later than June 14, 2023. ECF No. 18-4 at 2. The email also provided contact information for Caris personnel who were available to answer any questions Plaintiff might have regarding the agreement, including its arbitration provision. *Id.* Immediately preceding the signature block, the PIIA also included acknowledgments stating that Plaintiff had read and understood the agreement, had been afforded a full and reasonable opportunity to ask questions and consult with any person of her choosing before signing, and was executing the agreement knowingly and voluntarily. ECF No. 18-5 at 13. Plaintiff signed the PIIA later that same day. *Id.*

**C. <u>Plaintiff's Termination</u>**

In the spring of 2024, Dr. Tanaka was assigned to complete training for Caris' Hybrid Whole Transcriptome Sequencing ("HWTS") assay, a newly introduced diagnostic

product. ECF No. 19 at 11. During that training, she discovered that Caris had not established standard operating procedures for the HWTS assay, despite regulatory requirements mandating such procedures. *Id.* Dr. Tanaka promptly reported these compliance concerns to Caris' Medical Director, Dr. Jaclyn Hechtman, but her objections were disregarded. *Id.* At a later point, an error occurred in one of Dr. Tanaka's HWTS cases, which she alleges Caris subsequently relied upon as a justification for terminating her employment. *Id.* On September 13, 2024, before Dr. Tanaka completed her performance improvement plan, she was unexpectedly locked out of Caris' computer systems while actively working on patient cases. *Id.* Dr. Tanaka alleges that she did not receive direct notice of her termination from Caris; instead, she learned that her employment had ended only after coworkers contacted her personal cellphone following an email from Caris informing employees that she was no longer with the company. *Id.*

**D. Procedural Background**

On April 4, 2025, Dr. Tanaka initiated suit in San Diego Superior Court, asserting California state law claims, including, whistleblower retaliation, wrongful termination in violation of public policy, and Unfair Business Practices. ECF No. 1-3. On May 30, 2025, Caris removed this matter to this Court based on 28 U.S.C. § 1332. ECF No. 1. On September 12, 2025, Defendant filed the instant Motion to Compel Arbitration. ECF No. 18. Plaintiff filed a response on September 26, 2025, ECF No. 19, and Defendant filed a reply on October 10, 2025. ECF No. 20.

## II. LEGAL STANDARD

The Supreme Court has enunciated a "liberal federal policy favoring arbitration." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339, 344 (2011) ("The overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings."). The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, et seq., governs the enforcement of arbitration agreements involving commerce. *See Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 232–33 (2013). Under the FAA, "[a] party aggrieved by the alleged failure, neglect, or refusal of

another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. In deciding whether to compel arbitration, courts limit their inquiry to two "gateway" issues: (1) whether a valid agreement to arbitrate exists, and (2) whether the agreement encompasses the dispute at issue. *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 999 (9th Cir. 2021) (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)). "If both conditions are met, the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." *Id.*

The FAA further provides that arbitration agreements are unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. District courts apply state law principles of contract formation and interpretation in determining which contracts are binding and enforceable under the FAA, if that law governs the validity, revocability, and enforceability of contracts generally. *See Arthur Anderson LLP v. Carlisle*, 556 U.S. 624, 630–31 (2009); *see also Wolsey, Ltd. v. Foodmaker, Inc.*, 144 F.3d 1205, 1210 (9th Cir. 1998). "Thus, generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening" federal law. *Dr.'s Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). Nevertheless, courts are directed to resolve any "ambiguities as to the scope of the arbitration clause itself . . . in favor of arbitration." *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 476 (1989).

## III. DISCUSSION

The parties do not dispute that Plaintiff received and signed the Arbitration Provision. Defendant moves for arbitration, arguing that agreement is enforceable, and alternatively, questions regarding the enforceability of the Arbitration Provision should be decided by the arbitrator. ECF No. 18-1 at 20-22. Defendant also contends that any unconscionable terms may be severed. *Id.* at 28. Plaintiff opposes, arguing that the issue of arbitrability is for the Court to decide and that the Arbitration Provision is unenforceable because it is both procedurally and substantively unconscionable, such that severance

cannot cure its defects. *See generally* ECF No. 19. The Court addresses each argument in turn.

**A. <u>Arbitrability</u>**

"Under California law, it is presumed the judge will decide arbitrability, unless there is clear and unmistakable evidence the parties intended the arbitrator to decide arbitrability." *Dennison v. Rosland Cap*. LLC, 47 Cal. App. 5th 204, 209, 260 Cal.Rptr.3d 675 (2020). Courts in this Circuit have held that where a delegation clause expressly assigns questions concerning the enforceability, revocability, or validity of an arbitration provision to the arbitrator, the clause constitutes clear and unmistakable evidence of the parties' intent to delegate arbitrability. *See Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1209 (9th Cir. 2016) (finding delegation where the arbitration agreement delegated "enforceability, revocability, or validity of the Arbitration Provision or any portion of the Arbitration Provision" to an arbitrator); *see also Kohler v. Whaleco, Inc.*, 757 F. Supp. 3d 1112, 1225 (S.D. Cal. 2024) (finding delegation where the agreement provided that "the arbitrator shall have exclusive authority to resolve . . . disputes arising out of or related to . . . the enforceability, revocability, scope, or validity of the Arbitration Agreement."); *Pearl v. Coinbase Global, Inc.*, 2023 WL 1769190, at *3 (N.D. Cal. Feb. 3, 2023) (same).

Here, the Arbitration Provision contains a delegation clause providing that "[e]mployee agrees to arbitrate any and all disputes arising out of or relating to the interpretation or application of this section, *but not* disputes about the enforceability, revocability or validity of any portion of this section." ECF No. 18-5 at 9 (emphasis added). Unlike the delegation clauses at issue in *Mohamed*, *Kohler*, and *Pearl*, the language here does not expressly delegate questions concerning enforceability, revocability, or validity of the Arbitration Provision to the arbitrator. Therefore, the Court retains authority to decide Plaintiff's challenges to the enforceability of the Arbitration Provision.

**B. <u>Enforceability of the Arbitration Agreement</u>**

"Under California law, a contract must be both procedurally and substantively

unconscionable to be rendered invalid." *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 922 (9th Cir. 2013). "To establish this defense, the party opposing arbitration must demonstrate procedural and substantive unconscionability, but both 'need not be present in the same degree. Instead, a sliding scale exists such that 'the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable and vice versa.'" *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 1000 (9th Cir. 2021) (quoting *Sanchez v. Valencia Holding Co.*, 61 Cal. 4th 899, 910 (2015)).

1. <u>Procedural Unconscionability</u>

"Procedural unconscionability concerns the manner in which the contract was negotiated and the respective circumstances of the parties at that time." *Chavarria*, 733 F.3d at 922. "To determine whether the arbitration agreement involves more than 'minimal' procedural unconscionability, we consider 'whether circumstances of the contract's formation created such oppression or surprise that closer scrutiny of its overall fairness is required.'" *Ronderos v. USF Reddaway, Inc.*, 114 F.4th 1080, 1090 (9th Cir. 2024); quoting *OTO, L.L.C. v. Kho*, 8 Cal.5th 111, 126 (2019). "Oppression arises from an inequality of bargaining power that results in no real negotiation and an absence of meaningful choice." *Flores v. Transamerica HomeFirst, Inc.*, 93 Cal. App. 4th 846, 853, 113 Cal.Rptr.2d 376 (2001). "Surprise involves the extent to which the contract clearly discloses its terms as well as the reasonable expectations of the weaker party." *Chavarria*, 733 F.3d at 922 (citation omitted)." Both elements, oppression and surprise, are present in adhesive contracts, making adhesive contracts at least somewhat unconscionable. *See Fuentes v. Empire Nissan, Inc.*, 19 Cal. 5th 93, 104 (2026) ("Some procedural unconscionability is present whenever an agreement is a contract of adhesion.")

Plaintiff argues that the PIIA and Arbitration Provision constitute an adhesive contract because Caris, a large biotechnology company, possessed overwhelming bargaining power, presented the agreement after Plaintiff had already begun working, and conditioned her continued employment on signing it. ECF No. 19 at 14-15. Defendant

responds that Plaintiff has not established procedural unconscionability because she was given at least seven days to review the agreement, consult counsel, and negotiate its terms, but chose not to do so. ECF No. 20 at 4-5. Defendant also disputes Plaintiff's claim that signing the agreement was required to retain previously granted stock options, asserting instead that the stock options were "additional consideration" for executing the agreement. *Id.* at 5.

Here, the Arbitration Provision was procedurally unconscionable because it is an adhesive contract. "An adhesive contract is standardized, generally on a preprinted form, and offered by the party with superior bargaining power 'on a take-it-or-leave-it basis.'" *Fuentes*, 19 Cal. 5th at 104. Each of those elements is present here.

First, the Provision was standardized. Caris drafted the PIIA and sent it to Plaintiff through DocuSign without Plaintiff's input. ECF Nos. 18-1 at 11, 18-4 at 2. Second, Caris had greater bargaining power. Caris drafted and presented the PIIA to Plaintiff approximately one month after she began working for the company and completed her initial onboarding and training. ECF No. 18-1 at 11. The disparity in bargaining power was reflected in Caris's June 7, 2023 email, which informed Plaintiff that her previously approved equity grant was "consideration for and conditioned on" her execution of the PIIA. ECF No. 18-4 at 2. Finally, the Arbitration Provision was offered on a take-it-or-leave-it basis. Caris instructed Plaintiff to execute the PIIA by June 14, 2023. *Id.* Even though Plaintiff was provided seven days to review the agreement and given two contacts for questions, the agreement was nevertheless presented as a condition of continued employment rather than through meaningful bargaining. *See Alvarez v. Altamed Health Servs. Corp.*, 60 Cal. App. 5th 572, 591 (2021) ("When arbitration is a condition of employment, there is inherently economic pressure on the employee to accept arbitration. This alone is a fairly low level of procedural unconscionability."). Therefore, Plaintiff has demonstrated that the Arbitration Provision is procedurally unconscionable to at least a minimal degree.

//

2. Substantive Unconscionability

"The substantive element looks to the actual terms of the parties' agreement to ensure that contracts, particularly contracts of adhesion, do not impose terms that have been variously described as overly harsh, unduly oppressive, so one-sided as to shock the conscience or unfairly one-sided." *Magno v. The Coll. Network, Inc.*, 204 Cal.Rptr.3d 829, 969 (2016) (internal quotation marks omitted). To avoid substantive unconscionability, an arbitration agreement must contained at least "a modicum of bilaterality." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 117 (2000).

Under California law, [w]hen only the weaker party's claims are subject to arbitration, and there is no reasonable justification for that lack of symmetry, the agreement lacks the requisite degree of mutuality." *Abramson v. Juniper Networks, Inc.*, 9 Cal. Rptr. 3d 422, 437 (2004). To illustrate, in *Armendariz*, the California Supreme Court explained that "it is unfairly one-sided for an employer with superior bargaining power to impose arbitration on the employee as plaintiff but not to accept such limitations when it seeks to prosecute a claim against the employee, without at least some reasonable justification for such one-sidedness based on "business realities." 24 Cal. 4th at 117. The court held that the agreement in *Armendariz* lacked mutuality because the employee's wrongful-termination claim was subject to arbitration, while the employer remained free to pursue a corresponding trade-secrets claim in court – and the employer did not offer a reasonable justification based on "business realities." *Id.* at 120. Similarly, in *Abramson*, the arbitration agreement required both parties to arbitrate all claims, however the arbitration agreement contained a carve out that exempted claims relating to trade secrets, confidential information, and other intellectual property from arbitration. 9 Cal. Rptr. 3d at 443. The Court concluded that "[the] carve-out in the employment contract thus addresses only the employee's breach of covenants designed to protect only the employer's interests. It therefore lacks mutuality, both facially and operationally." *Id.* at 443-44.

Plaintiff argues that the Arbitration Provision is substantially unconscionable because it requires employees to arbitrate all claims, while allowing Caris to pursue certain

claims in court, and exempts Caris from posting a bond. ECF No. 19 at 18-20. Defendant responds that the Provision merely requires "arbitrable claims to be arbitrated." ECF No. 20 at 6. Defendant further argues that the Provision does not improperly waive any bond requirement because posting a bond is not a *per se* prerequisite to obtaining a preliminary injunction and may be waived by stipulation. *Id.*

The Court agrees with Plaintiff and finds that the Arbitration Provision is substantively unconscionable because it requires Plaintiff to arbitrate practically all claims arising from the employment relationship, while reserving Defendant's right to pursue certain relief in court. More specifically, the Provision requires the employee to arbitrate employment disputes. ECF No. 18-5 at 9 ("[E]mployee agrees that any and all controversies, claims or disputes that Employee has or may in the future have with the Caris Group . . . arising out of, relating to or resulting from the Employment . . . shall be subject to binding arbitration.). In stark contrast, the Arbitration Provision broadly preserves Defendant's exclusive right to access the courts to pursue certain claims against Plaintiff arising out of her employment, including trade secrets, intellectual property, non-competition, venders, customers, solicitation of employees, and alleged disparagement. In relevant part, it states:

> [I]n the event of a breach or threatened breach of any of the covenants and promises contained in Section 2 and Section 4 through Section 8, the Caris Group will suffer irreparable injury . . . [and] will therefore be entitled to: preliminary and permanent injunctive relief in addition to any other legal or equitable remedies available to the Caris Group, without the posting of a bond, enjoining Employee from engaging in activities in breach of this Agreement.[1]

ECF No. 18-5 at 10.

---

[1] The referenced provisions concern the protection of confidential and proprietary information (Section 2), non-competition obligations (Section 4), non-solicitation and non-inducement of customers and employees (Sections 5 and 6), non-interference with vendors and suppliers (Section 7), and non-disparagement (Section 8).

Thus, while Plaintiff must arbitrate her employment-related claims, the Provision expressly preserves Defendant's ability to seek judicial relief for claims involving the Agreement's restrictive covenants. Defendant, moreover, fails to identify any reasonable justification based on a "business reality" for this lack of mutuality.[2] *Armendariz*, 24 Cal. 4th at 117 ("[I]t is unfairly one-sided for an employer with superior bargaining power to impose arbitration on the employee as plaintiff but not to accept such limitations when it seeks to prosecute a claim against the employee, without at least some reasonable justification for such one-sidedness based on 'business realities.'"). Accordingly, because the claims most likely to be brought by Caris are exempt from arbitration, while Plaintiff is required to arbitrate virtually all claims she is likely to assert, the Provision lacks mutuality and is unfairly one-sided.

3. Conclusion

The Court finds that the Arbitration Provision contains both procedural and substantive unconscionability. Therefore, the Provision is unconscionable as a matter of law. The Court turns to whether the issue of whether the unconscionable provisions may be severed.

**C. Severance**

Under California law, courts may sever unlawful or unconscionable provisions from an arbitration agreement so long as the remainder of the agreement is not "permeated" by unconscionability. *Serafin v. Balco Properties Ltd., LLC*, 235 Cal. App. 4th 165, 184 (2015); *McManus v. CIBC World Markets Corp.*, 109 Cal. App. 4th 76, 101–02 (2003). When deciding whether to sever the unconscionable provisions, "[c]ourts are to look to the

---

[2] Defendant contends that third-party beneficiaries are subject to the Arbitration Provision and that arbitration is necessary to ensure that claims brought against its employees by such third parties are resolved expeditiously. *See* ECF Nos. 18 at 25-28. However, this argument addresses only claims brought by third parties; it does not explain what "business realities" justify requiring Plaintiff to arbitrate her claims while preserving Defendant's right to pursue its own claims in court.

various purposes of the contract." *Armendariz*, 99 Cal.Rptr.2d at 775. "If the central purpose of the contract is tainted with illegality, then the contract as a whole cannot be enforced." *Id.* However, "[i]f the illegality is collateral to the main purpose of the contract, and the illegal provision can be extirpated from the contract by means of severance or restriction, then such severance and restriction are appropriate." *Id.*

Courts have found that when an arbitration agreement is unconscionable because the employer has carved out exceptions for itself, the agreement may be so permeated by unconscionability that severance is not appropriate. For example, in *Abramson*, the court explained that severing the unconscionable provision would effectively require both the employer and employee to arbitrate all claims. 9 Cal. Rptr. 3d at 445. But because the employee was no longer employed by the company, the employer was unlikely to have any claims against the employee in the future. *Id.* Therefore, there would not be mutuality, because the employee would still be the only party likely to be required to arbitrate a claim. *Id.* The court therefore concluded that severance would result in "an undeserved benefit to the employer and an undeserved detriment to the employee." *Id.* Similarly, in *Stoker v. Blue Origin, LLC*, 343 Cal. Rptr. 3d 756, 771 (2026), the Court acknowledged that certain provisions of the arbitration agreement could arguably be severed. However, one provision exempted from arbitration claims most likely to be brought by the employer while requiring arbitration of claims most likely to be brought by the employee. *Id.* at 772. The Court declined to sever the provision, reasoning that "[the] section's overbreadth could be corrected only by adding language limiting the provisions' reach to claims arising out of [the employee's] employment." *Id.* The Court concluded that it lacked authority under governing law to cure an unconscionable contract through "reformation and augmentation." *Id.*

In similar fashion, the Arbitration Provision here cannot be severed. Like the agreements in *Abramson* and *Stoker*, the Provision requires Plaintiff to arbitrate virtually all claims arising from her employment while expressly preserving Defendant's ability to seek judicial relief for the claims most likely to be asserted by Defendant. If the Court

were to sever the section exempting Defendant from arbitration, then all claims would become subject to arbitration – which is a significant obligation that Defendant never agreed to. Such "reformation and augmentation" is beyond the Court's authority. *Stoker*, 343 Cal. Rptr. 3d at 772. Also, as in *Abramson*, severance would provide an undeserved benefit to the employer and an undeserved detriment to the employee. 9 Cal. Rptr. 3d at 445. Allowing Defendant to retain the judicial remedies it reserved for itself while compelling Plaintiff to arbitrate her claims would produce precisely that result. Accordingly, because the unconscionability permeates the Arbitration Provision and severance would not serve the interests of justice, the Court declines to sever the offending provisions.

**D. <u>CONCLUSION</u>**

The Arbitration Provision is procedurally and substantively unconscionable. The unconscionability cannot be removed from this Arbitration Provision by severing or restricting the objectionable terms. The agreement thus is wholly unenforceable as a matter of law. The motion to compel arbitration is **DENIED**. ECF No. 18. The Motion for Leave to File *Sur-Reply* is also **DENIED** as moot. ECF No. 21.

**IT IS SO ORDERED.**

Dated: September 28, 2026

Honorable Benjamin J. Cheeks
United States District Judge